OVERSEERS OF THE TOWNSHIP OF ALEXANDRIA *v.* OVERSEERS OF THE TOWNSHIP OF KINGWOOD.

1. The maiden settlement which a woman has from her parents is merged, by marriage, in the settlement of her husband.

2. The place of birth is the place of every man's legal settlement until another can be shewn.

3. A settlement out of the State is deemed in law no settlement.

*Wall* and *Wood* for Kingwood.

*Saxton* and *Vroom* for Alexandria.

The Chief Justice having been concerned as counsel before he came upon the bench, gave no opinion.

The opinion of the Court was delivered by

FORD, J.—An order by two justices to remove Mary Johnson, wife of Samuel Johnson, from the township of Kingwood to the township of Alexandria, was taken by appeal to the Sessions, and quashed upon the following case:

Samuel Johnson, the husband, who provides no maintenance for his wife, and never acquired a settlement by his

own act, was *born* in the township of Alexandria. Daniel Johnson, his father, an Irishman direct from Europe, landed first at Philadelphia, and there acquired a legal settlement. He afterwards removed to this state where he married, and resided some years in one, and some years in another part of Hunterdon county, but never obtained a settlement in New Jersey. The pauper is the daughter of David Heath, whose settlement was a derivative one from his father, John Heath, who owned a large freehold estate in the township of Amwell. The pauper testified to a marriage between herself and Samuel Johnson, in Pennsylvania, and their living together for some time ; the fact of the marriage being uncontradicted by any witness or circumstances, and relied on by the justices and Sessions, cannot be found untrue here, or we should have to send the case back.

Now the maiden settlement which a woman has by her parents, becomes merged or drowned by marriage in the settlement of the husband, if he had one. With respect to Samuel Johnson the husband, the case states these two important facts, that he was *born* in the township of Alexandria, and that he never afterward acquired a settlement by his own act. There is a great and imperious rule of law which the counsel on neither side were able to deny, that *the place of birth* is the place of every man's legal settlement until another can be shewn, 3 *Burns' Jus. title*, settlement by birth. It required the strength of an act of the Legislature to make the place of the birth of a *bastard* an exception to this rule. *Rev. Laws* 36, *sec.* 4. This section amounts to a legislative recognition that the place of birth is the place of settlement till another one can be shewn. It is agreed that children follow the settlement of their parents, and that Samuel Johnson's settlement in Alexandria by birth, will be done away if he derived any from Daniel Johnson his father, in New Jersey. But Daniel Johnson had none in New Jersey for himself, and consequently he could not communicate any to his children ; he was a pauper of Pennsylvania, and it

would be a very dangerous doctrine that every Pennsylvania pauper has a legal settlement for himself, and by consequence, for his children in New Jersey. A doctrine like this is asserted by no body.

But is said that Samuel Johnson the son, has a legal settlement in Philadelphia in right of his father, and this is enough to destroy that settlement by *birth*, which according to the terms of the rule, is to be done away if another can be shewn. But this shewing is not in the least a compliance with the rule, inasmuch as a settlement *out of the state* is deemed in law *no settlement* at all. Thus a Hollander, Scotchman or Irishman, born in their respective countries, and moving into England, have been adjudged for more than a century to be persons having *no settlement;* 3 *Burn's Jus.* 291. If it be said on account of our union under one government, that we are more intimately related than England is to Holland or was to Ireland, it must be remembered that Congress have no power to regulate our poor laws, and that each state is as sovereign and independent of the others and of Congress, on this subject, as if no common tie existed.

I admit there was a case of *Elizabethtown* v. *Westfield*, in 1804, in the time of Chief Justice KINSEY, wherein the court say :—That an order of removal from one of the neighboring states, unappealed from, is conclusive evidence against the township to which the pauper is removed ; and that it was *universally* so held both before and since the revolution. But there was certainly a mistake in the reporter, or in the court, as to matter of fact, if the term *universal* meant to include the state of New York. Some instances of her courtesy in receiving paupers from us there might have been, but there were many to the contrary even at that date ; and of late she threatens our constables with criminal prosecutions if they dare to carry paupers into the city under orders of removal from this state. And can she adjudge what persons our townships shall support as paupers ? Can they be trans-

Alexandria *v.* Kingwood.

ported from township to township in New Jersey, as *prisoners* under process from her courts or justices? Must our overseers appeal to her courts on questions of settlement *here?* Are our civil officers, constables and overseers amenable to her courts? I think the case has been either mis-reported or not fully considered.

But let the authority of that case be what it might in 1804, there is a statute of 3d December, 1807, *Rev. Laws,* 533, which prohibits the introduction of process from any other state into ours, for the removal of paupers, or any cause whatever. It provides that if any person, not authorized under the authority of this state or of the United States, shall execute or attempt to execute any legal process within the state of New Jersey, he shall be punished by fine *and* imprisonment at hard labor in the state prison. Thus terminates all foreign jurisdiction over the citizens, constables or townships of this state. As their jurisdictions cannot send orders or process of removal into our state, it follows as a necessary consequence that we cannot send the like into theirs. For these reasons the pauper in question cannot be removed into Pennsylvania; our process will not enable officers to carry her there, for it expires at the boundary line. It would send this citizen from her *native* state, family and connections, without lawful authority, into exile and banishment. A settlement out of the state must be considered as none at all, and cannot do away that which the husband acquired in Alexandria by its being the place of his birth. The order of the Sessions must therefore be reversed, and the order of the justices affirmed.

Let the order of the Sessions be reversed, &c.